**Genaro GARCIA et al.**

v.

**The TEXAS STATE BOARD OF MEDICAL EXAMINERS and the Secretary of State of the State of Texas.**

**Civ. A. No. SA-72-CA-375.**

United States District Court,
W. D. Texas,
San Antonio Division.

Oct. 21, 1974.

Mario G. Obledo, Vilma S. Martinez and Sanford Jay Rosen, of the Mexican American Legal Defense & Educational Fund, Michael A. Mendelson & Alan B. Exelrod, San Francisco, Cal., for plaintiffs.

John L. Hill, Atty. Gen. of Tex., by Bill Campbell, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

Before THORNBERRY, Circuit Judge, and SUTTLE and WOOD, District Judges.

PER CURIAM.

This suit is brought by Genaro Garcia and five other persons, all in their individual capacities, along with three organizations or associations, one of which is known as the San Antonio Community Health Maintenance Association (SACHMA), an unincorporated organization whose purpose is to provide medical and health care programs to the Mexican-American and black communities as well as other low-income groups in Bexar County, Texas. The action is brought as a class action in behalf of plaintiffs and all other members of the class of persons similarly situated who desire to incorporate the San Antonio Community Health Maintenance Association and similar organizations who wish to hire on a salary basis licensed members of the medical profession. The defendants are the Texas State Board of Medical Examiners and the Secretary of State for the State of Texas. After hearing the arguments of counsel and considering the briefs filed by the respective parties, the Court enters judgment for the defendants.

The Memorandum Opinion and Order entered May 18, 1974, by the Honorable John H. Wood, Jr., United States District Judge, denied plaintiffs' request for the convening of a Three Judge Federal Court and granted defendants' motion to dismiss. On appeal to the Fifth Circuit Court of Appeals, the cause was held proper for the convening of a Three Judge Court and remanded for that purpose. Garcia, et al. v. Texas State Board of Medical Examiners, 5th Cir., 492 F.2d 131 (1974).

Under date of August 30, 1972, Articles of Incorporation for a nonprofit corporation known as San Antonio Community Health Maintenance Association (SACHMA) were prepared for the purposes of said corporation to be to protect the public health, aid the development and promotion of the public health, to administer and supervise plans which involve health and medical services, to foster, encourage and coordinate health services among the membership, and to contract for the employment of licensed physicians on a salary basis to work for said corporation as employees. None of the incorporators or original Board of Directors was or is a physician licensed by the Texas State Board of Medical Examiners.

SACHMA submitted its Articles of Incorporation to the Secretary of State with the request that a Charter be issued. The Secretary of State refused to grant a corporate Charter because none of the proposed incorporators were licensed to practice medicine in the State of Texas by the Texas Medical Practice Act as required by Article 4509a, Vernon's Ann. Texas Civil Statutes, and Article 1396–2.01B(2), the Texas Nonprofit Corporation Act. Plaintiffs assert that the foregoing statutes, as well as Section (12) and Section (15) of Article 4505, Article 4506 and Article 1528e, Vernon's Texas Civil Statutes, deny to them equal protection under the Fourteenth Amendment and the right to assemble under the First Amendment to the United States Constitution because all of same prevent plaintiffs from associating in corporate form for the purpose of treating, or offering to treat the sick, injured or infirm human beings, when none of plaintiffs is licensed to practice medicine in the State of Texas. Plaintiffs further assert that they are being denied the right to obtain Federal funds as provided for in 42 U.S.C. § 246 by the Secretary of State in denying their application for a corporate charter.

Plaintiffs further seek to enjoin the enforcement of Articles 4505(12), 4505 (15) and 4506 insofar as they deny plaintiffs and the class which they rep-

resent the rights of association, due process, and equal protection of the law; and for a mandatory injunction against the Secretary of State of the State of Texas to issue a corporate charter to Plaintiff SACHMA.

Parenthetically, plaintiffs pointed out to the Court an observation well taken: that, by analogy, the "Texas Integrated Bar Act" is for the same reasons constitutionally impermissible as it permits only licensed attorneys to incorporate for the purpose of practicing law.

Article 4505(12), V.C.S., prohibits the "permitting, or allowing, another to use his license, or certificate to practice medicine in this State, for the purpose of treating, or offering to treat, the sick, injured, or afflicted human beings", and such conduct is made a ground for the suspension and revocation or cancellation of his license to practice medicine by the provisions of Article 4506, V.C.S. Texas courts have held that when a corporation employs a licensed physician to treat patients and itself receives the fee, the corporation is unlawfully engaged in the practice of medicine. The licensed physician so employed is violating the provisions of Article 4505(12), V.C.S., and is subject to having his license to practice medicine in Texas cancelled, revoked, or suspended by the Texas State Board of Medical Examiners. F. W. B. Rockett, M.D. v. State Board of Medical Examiners, 287 S.W.2d 190 (Tex.Civ. App., 1956, n. r. e.); Watt v. State Board of Medical Examiners, 303·S.W.2d 884 (Tex.Civ.App., 1957, error ref.) cert. den. 356 U.S. 912, 78 S.Ct. 669, 2 L.Ed. 2d 585; and Texas Attorney General's Opinion WW–278.

■ The police power of the State includes the power to enact comprehensive, detailed, and rigid regulations for the practice of medicine, surgery, and dentistry. Douglas v. Noble (1923), 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590; Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623; People v. Witte, 315 Ill. 282, 146 N.E. 178, 37 A.L.R. 672. There is no right to practice medicine which is not subordinate to the police power. Lambert v. Yellowley, 272 U.S. 581, 47 S.Ct. 210, 71 L.Ed. 422, 49 A.L.R. 575; People v. Walsh, 346 Ill. 52, 178 N.E. 343. Unchallenged is the right of the States to license or otherwise regulate or provide for such basic services in our society as police and fire protection, electricity, telephone services, sanitation and, of course, legal and health services.

■ The needs of the general public for highly qualified, licensed healers and the right of the State of Texas under its police powers to regulate such practitioners must be weighed against the alleged abridgment of plaintiffs' constitutional rights.

This right of a State to regulate under its police powers all aspects of the practice of medicine and thereby help provide for the general health and welfare of its citizens is of such vast importance as to approach the status of a duty. Nothing is more fundamental than the rights of the various States to furnish the people competent health services and as a direct corallary to this right they have a corresponding duty to carefully prescribe minimum requirements for the licensing of those administering medical and surgical services. This is a highly specialized field of experts daily dealing with the very lives of the citizenry and the State must, therefore, insure as best it can the competency of these experts. Therefore, for this Court to disturb this right it must be clearly demonstrated that the State is in this case engaged in an unreasonable exercise of its reserved police power.

Typical of police power' legislation, Texas Article 4509a, and its counterparts throughout the nation, was initially enacted to protect the populace from the early medical quacks and charlatans. Historically, such remedial statutes have been adopted as a result of hindsight and in the wake of a stream of public abuse at the hands of the entrepreneur medicine man purveying his snake oil elixir. Odious chicanery of this type was rivaled only by the "Shell game" artist and rainmaker. Eventually, public outrage over

insipid and often harmful patent medicines and the ministrations of untrained healers became so widespread and the effects of their handiwork so egregious that the Federal and State governments were forced to act. With the assistance of each profession (medicine and law) rigid licensing procedures and requirements were adopted by all States to insure the quality and competency of the practitioner in the interest of public welfare. On the national level the Food and Drug Administration was established to oversee and regulate the commercial drug industry. Such has been the long, arduous development of the legislative safeguards we cherish today. By their very nature, the medical and legal professions are complex, esoteric disciplines, the practice or administration of which by the ignorant or untrained, historically and inevitably leads to the exploitation of a naive public.

The case of Dr. Allison, Dentist v. Allison, 360 Ill. 638, 196 N.E. 799, is in point and holds that the practice of a profession is subject to licensing and regulation and is not subject to commercialization or exploitation. As this Court says:

> "To practice a profession requires something more than the financial ability to hire competent persons to do the actual work. It can be done only by a duly qualified human being, and to qualify something more than mere knowledge or skill is essential . . . No corporation can qualify."

No corporation can meet the requirements of the statute essential to the issuance of license. In People by Kerner v. United Medical Service (1936), 362 Ill. 442, 200 N.E. 157, reported in 103 A.L.R. 1229, it was held that a corporation which received the fees charged patients had practiced medicine in violation of the statute where it owned a clinic with offices wherein the treatment of disease was engaged in solely by licensed and registered physicians and surgeons employed by the corporation.

In re Thomas Diagnostic Clinic (1921), 30 Pa.Dist.R. 778, it was stated that an application for a certificate of incorporation, stating its purpose as the establishing and maintaining of a clinic for the diagnosis and treatment of disease and laboratories for the examination and investigation of disease, and establishing, maintaining, and operating a hospital where medical and surgical treatment would be provided, would include the practice of medicine by the corporation, and for that reason, the application should be disapproved, it being stated that a corporation could not be formed for the practice of medicine.

In Painless Parker v. Dental Examiners (1932), 216 Cal. 285, 14 P.2d 67, it was held that a corporation or an unlicensed person may not manage, conduct or control the business side of the practice of dentistry. The Court said:

> "If the contention of appellant be sound, then the proprietor of the business may be guilty of gross misconduct in its management and violate all standards which a licensed dentist would be required to respect and stand immune from any regulatory supervision whatsoever. His employee, the licensed dentist, would also be immune from discipline upon the ground that he was but a mere employee and was not responsible for his employer's misconduct, whether the employer be a corporation or a natural person."

Article 4509a, Vernon's Texas Civil Statutes, authorizes physicians and doctors licensed by the Texas State Board of Medical Examiners to form non-profit corporations organized for the purpose of delivering health care to the public, with the stipulation that the directors or trustees of such organizations be persons duly licensed by the Board of Medical Examiners. The reasons for Article 4509a are manifest. Those reasons insure the people of the State of Texas of obtaining competent and quality medical treatment when they take their ills and infirmities to a qualified physician for treatment.

The Texas statutes clearly have a rational basis to justify the restrictions imposed. The Texas legislature seeks to

preserve the vitally important doctor-patient relationship, and prevent possible abuses resulting from lay person control of a corporation employing licensed physicians on a salaried basis. The Texas legislature could rationally believe that the statutes in question will accomplish these goals. Since the plaintiffs do not seek to engage in activity protected under the first amendment or any other constitutional provision, the Texas laws must be upheld. *Cf*. United Mine Workers v. Illinois State Bar, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); Brotherhood of R. R. Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

■ The California Supreme Court has aptly stated that the matter of changing State policy regarding the practice of medicine is one for the Legislature, not the Courts. In State Board of Medical Examiners v. Pacific Health Corporation (1938), 12 Cal.2d 156, 82 P.2d 429, cert. den. 306 U.S. 633, 59 S.Ct. 463, 83 L.Ed. 1035, the Court, in holding a corporation similar to plaintiffs' proposed SACHMA to be illegally engaged in the practice of medicine, stated:

"The other question raised by defendant's proffered materials is whether the time has come, as indicated by the movement for health insurance and group medicine, to reverse the long settled policy against corporate medical practice and declare it legal and proper. A simple answer would be that the few extracts from the opinions of writers which we find in the briefs furnish us with no evidence whatsoever of a widespread change in social viewpoint sufficient to repudiate the existing law of practically all the states. All that we have before us is the proof of a controversy, which has raged for years, between medical men, sociologists and others, as to the future course of medical practice. The desirability of present methods and the suggested reforms, including various kinds of insurance and group treatment, are hotly debated. (See 25 Cal.L.Rev. 91, 93.) Public policy may change, and doubtlessly where statutes do not cover the field, the court may follow such changes, but the court must, in such case, declare the public policy, the social view of the people generally, and not merely its own private choice among hopelessly conflicting views of desirable reform of settled practices or principles in this field. In the present circumstances there can be no true declaration by this court that a change in social viewpoint now requires the abandonment of the rule against corporate practice of medicine. Such a drastic change should come from the legislature, after the full investigation and debate which legislative organization and methods permit. Though certainly aware of the controversy, and with presumed knowledge of our decisions preventing corporate practice (see supra), the legislature thus far has not acted, and until it does we deem it proper to follow the existing law. See Pacific Employers Ins. Co. v. Carpenter, supra, 10 Cal.App.2d 592, 602, 52 P.2d 992."

So does this Court deem it proper to follow the existing policy in this area as set down by the elected representatives of the society in the Texas Medical Practice Act and related statutes.

Defendants contend, and this Court agrees, that the Texas Legislature is the only proper forum for plaintiffs to seek relief for their alleged plight. In those States that permit lay people to associate for the purpose of rendering health care services, such has been done with the blessings of the legislatures of those States, not by judicial edict.

The plaintiffs imply that the Texas Medical Practice Act promulgates an elitist, unreasonably restrictive and self-perpetuating monopoly by the medical profession to the detriment of the economically disadvantaged. While it is no doubt true that this nation faces a grave shortage of doctors, is the panacea to be found in the formation of non-profit lay-

man corporations? We think not. It appears to the Court that not only is such a corporation fraught with practical and ethical considerations, but may well represent a backward step in the legislative protections it has taken so long to achieve. Without licensed, professional doctors on Boards of Directors, who and what criteria govern the selection of medical and paramedical staff members? To whom does the doctor owe his first duty—the patient or corporation? Who is to preserve the confidential nature of the doctor-patient relationship? What is to prevent or who is to control a private corporation from engaging in mass media advertising in the exaggerated fashion so familiar to every American? Who is to dictate the medical and administrative procedures to be followed? Where do budget considerations end and patient care begin?

There can be no doubt but that more medical care at a less expensive cost is needed today. However, where the health of the American citizen is at stake, Machievellian rationale does not and should not apply. Should the Legislature in its wisdom find a necessity for the lay-medical corporation and the method for its proper administration, that is its prerogative and answer to the will of the electorate. Until such a time, this Court believes and so finds the existing statutes constitutionally permissible in all respects and will not endeavor or presume to retreat to the past at the potential expense of public health and welfare.

■ For relief under the First Amendment to the United States Constitution, plaintiffs rely on NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Brotherhood of Railroad Trainmen v. Virginia ex rel.

Virginia State Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964) and United Mine Workers of America v. Illinois State Bar et al., 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967). These cases involved the question of whether the association could communicate to its membership the fact that it had hired counsel to represent the membership in advancing their civil rights claims or workmen's compensation claims and whether the membership had the right to engage in association for the advancement of legitimate beliefs and ideas. The *Mine Workers* case does not hold that a corporation can practice law and is not applicable to the case at bar. Here, plaintiffs are seeking to associate for the purpose of practicing medicine without a license (by indirectly controlling the doctor-employees and receiving the fees paid) when none of the plaintiffs and none of the incorporators or directors of SACHMA is a licensed physician. Plaintiffs seek to do indirectly that which they cannot do directly.

The Texas statutes do not deny plaintiffs due process or equal protection under the Fourteenth Amendment to the United States Constitution; they do not arbitrarily discriminate between persons situated in circumstances similar to plaintiffs. On the contrary, they apply equally to everyone who is not a qualified, licensed physician.

It is, therefore, the Opinion of this Court that the defendants should have judgment on the merits.

### ORDER

For the reasons set forth in the Memorandum Opinion accompanying this Order it is accordingly ordered, adjudged and decreed that the defendants have judgment on the merits.