

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 22, 1998

Mr. Ron Allen
Executive Director
Texas State Board of Veterinary
 Medical Examiners
333 Guadalupe, Suite 2-330
Austin, Texas 78701-3998

Opinion No. DM-498

Re: Whether business arrangements between corporations and practicing veterinarians constitute the practice of veterinary medicine, and related questions (RQ-1086)

Dear Mr. Allen:

On behalf of the Texas State Board of Veterinary Medical Examiners (the "board"), you inquire about the legality under the Veterinary Licensing Act, article 8890, V.T.C.S., of certain novel business arrangements that corporate entities have recently attempted to enter into with practicing veterinarians. You describe three kinds of business arrangements between a veterinarian and a corporation not owned exclusively by veterinarians, asking in each case whether the corporation is practicing veterinary medicine.

Various provisions of the Veterinary Licensing Act (the "act") are relevant to your question about business arrangements between a veterinarian and a corporation not owned exclusively by veterinarians. Section 22(a) of the act bars a sole proprietorship, partnership, or corporation from engaging in veterinary medicine unless the owner, partners, or shareholders are all licensees of the board.[1] Thus, a corporation not owned exclusively by licensed veterinarians may not practice veterinary medicine. Section 4 of the act states that "[a] person may not practice, offer or attempt to practice veterinary medicine in this State without first having obtained a valid license to do so from the Texas Board of Veterinary Medical Examiners."[2] Violation of this provision constitutes a class A misdemeanor.[3] Pursuant to section 17 of the act "[t]he Board, through the Attorney General or any District or County Attorney, may institute an injunction proceeding . . . to enjoin any person from the practice of veterinary medicine . . . without such person having complied with the

---

[1] A "corporation" within section 22(a) of article 8890, V.T.C.S., does not include a municipal corporation or a nonprofit corporation organized under the Texas Non-Profit Corporation Act, V.T.C.S. arts. 1396-1.01 - 11.01. Letter Opinion No. 95-003 (1995).

[2] A list of exceptions from the licensing requirement is set out in section 3 of article 8890, V.T.C.S.

[3] V.T.C.S. art. 8890, § 4(b).

other provisions of this act."[4] Another enforcement mechanism against unlicensed persons is found in subsection 14(d) of the act:

> A person not licensed under this Act who violates this Act or a rule adopted by the Board under this Act is subject to a civil penalty of $1,000 for each day of violation. At the request of the Board, the attorney general shall bring an action to recover a civil penalty authorized under this subsection.

A licensed veterinarian who "has permitted or allowed another to use his license, or certificate to practice veterinary medicine in this state" is subject to discipline by the Board of Veterinary Medical Examiners.[5]

Your first question is as follows:

> 1. A corporation, not owned exclusively by veterinarians, buys an established veterinary clinic consisting of land, buildings, all the equipment, goodwill, trade name, business records, patient records, and drug inventory. Regardless of the relationship between the corporation and an unrelated veterinarian who will practice at the location, is the corporation's ownership of the clinic the practice of veterinary medicine prohibited by the Veterinary Licensing Act whenever animals are treated by a veterinarian at the clinic?

The "Practice of Veterinary Medicine" is defined as follows:

> (A) the diagnosis, treatment, . . . relief, or prevention of animal disease, deformity, defect, injury, or other physical condition, including the prescription or administration of a drug, . . . or other therapeutic or diagnostic substance or technique;

> (B) the representation of an ability and willingness to perform an act included in Paragraph (A) of this subdivision;

> (C) the use of a title, words, or letters to induce the belief that a person is legally authorized and qualified to perform an act included in Paragraph (A) of this subdivision; or

---

[4]*Id.* § 17.

[5]*Id.* § 14(a)(6).

(D)  the receipt of compensation for performing an act included in Paragraph (A) of this subdivision.[6]

Thus, a corporation that performed any of the above acts would engage in the practice of veterinary medicine. Texas cases on the corporate practice of medicine have established the following rule on a non-physician's receipt of compensation for medical services performed by a physician: "[W]hen a corporation employs a licensed physician to treat patients and itself receives the fee, the corporation is unlawfully engaged in the practice of medicine."[7] In *Garcia v. Texas State Board of Medical Examiners*, 384 F. Supp. 434 (W.D. Tex. 1974), *aff'd*, 421 U.S. 995 (1975) a three judge court discussed the policies underlying this rule:

> It appears to the Court that not only is such a corporation fraught with practical and ethical considerations, but may well represent a backward step in the legislative protections it has taken so long to achieve. Without licensed, professional doctors on Boards of Directors, who and what criteria govern the selection of medical and paramedical staff members? To whom does the doctor owe his first duty--the patient or the corporation? . . . Who is to dictate the medical and administrative procedures to be followed? Where do budget considerations end and patient care begin?[8]

Where the corporation is engaged in the unlicensed practice of medicine, the physician employed by the corporation is in effect "permitting or allowing another to use his license or certificate to practice medicine in this state," in violation of the Medical Practices Act, and is subject to having his license canceled, revoked, or suspended by the Board of Medical Examiners.[9] This rule, in our opinion, also applies to licensed veterinarians, because of the similarities of provisions in both licensing statutes and the specific reference to the receipt of compensation in V.T.C.S. article 8890, section 2(2)(D). Accordingly, we conclude as a matter of law that a private, for-profit corporation may not employ a licensed veterinarian to provide veterinary medical services and itself receive the fee for these services. The corporation would be unlawfully engaged in the practice of veterinary medicine, while the licensed veterinarian employed by the corporation would violate the prohibition against permitting or allowing another to use his license to practice medicine and would

---

[6]*Id.* § 2(2).

[7]*Garcia v. Texas State Bd. of Med. Exam'rs*, 384 F. Supp. 434, 437 (W.D. Tex. 1974), *aff'd*, 421 U.S. 995 (1975); *Flynn Bros, Inc. v. First Med. Assocs.*, 715 S.W.2d 782, 785 (Tex. Civ. App.--Dallas 1986, writ ref'd n.r.e.); *Watt v. Texas State Bd. of Med. Exam'rs*, 303 S.W.2d 884, 887 (Tex. Civ. App.--Dallas, 1957, writ ref'd n.r.e.), *cert. denied*, 356 U.S. 912 (1958); *Rockett v. Texas State Bd. of Med. Exam'rs*, 287 S.W.2d 190, 191-92 (Tex. Civ. App.--San Antonio 1956, writ ref'd n.r.e.).

[8]*Garcia*, 384 F. Supp. at 440.

[9]*Rockett*, 287 S.W.2d at 191 (citing former V.T.C.S. art. 4505, § 12, now codified as V.T.C.S. art. 4495b, § 3.08(12); *see also* V.T.C.S. art. 4495b, § 3.08(15)).

be subject to having his license canceled, revoked, or suspended by the Board of Veterinary Medical Examiners.

However, you have asked whether the corporation's ownership of the clinic constitutes the practice of veterinary medicine, regardless of the relationship between the corporation and the veterinarian. Whether a corporation is engaging in the practice of veterinary medicine in violation of law is a fact question,[10] which cannot be addressed in an attorney general opinion.[11] You provide facts that may be some evidence of unauthorized practice, but we cannot answer your question as a matter of law.

The transaction you describe does implicate other provisions of the Veterinary Licensing Act as well as other statutes. Pursuant to subsection 23(c) of the act, it is not a violation of the act for a veterinarian to lease space. Thus, the mere fact that a corporation owns space leased to a veterinarian does not constitute a violation of the act. However, additional limitations apply if a veterinarian leases space in a mercantile establishment: "[t]he practice of a veterinarian who leases space from and practices veterinary medicine on the premises of a mercantile establishment must be owned by a licensed veterinarian" and "must be under the exclusive control of a licensed veterinarian." Physical separation between the veterinarian's leased space and the rest of the commercial space is required.

Section 23 also provides that "[a]ll patient and business records . . . are the sole property of the veterinarian and free from the control of . . . any person not licensed under this Act," although a veterinarian is not prohibited from entering into a management agreement and permitting employees or agents of the management company to have access to copies of patient records as necessary for management functions.[12] A corporation that is not owned exclusively by veterinarians may not own the patient records or business records,[13] nor may it own the drug inventory.[14] Finally, subsection 2A(b) of article 8890, V.T.C.S., provides in part that "[t]he professional services of a veterinarian may not be controlled or exploited by any person or entity not licensed under this Act that intervenes between the client[15] and the veterinarian." The rest of this subsection makes it very clear that a veterinarian may not allow an unlicensed person to interfere with his or her practice of

---

[10]*See generally, Rockett,* 287 S.W.2d at 191.

[11]*See, e.g.,* Attorney General Opinions DM-388 (1996) at 4; DM-98 (1992) at 3; M-187 (1968) at 3; O-2911 (1940) at 2. In some cases, a question of fact may be resolved as a matter of law; *see* Attorney General Opinions DM-121 (1992) at 2, 4; JM-1216 (1990) at 2; Letter Opinion No. 92-8 (1992) at 2.

[12]V.T.C.S. art. 8890, § 23(b).

[13]*Id.*

[14]Health & Safety Code § 483.041.

[15]The "client" is the owner or other caretaker of an animal under a veterinarian's care, while the animal is the "patient." *See* V.T.C.S. art. 8890, § 2A(a)(1).

veterinary medicine, and that a veterinarian is directly responsible to the client and for the care and treatment of the patient. We cannot determine as a matter of law whether the corporation's ownership of equipment, good will, and trade name, either individually or in combination with ownership of other elements of a practice, would violate any provision of the act, although such ownership might be relevant to violations of it.

You next ask:

[2.] Assuming that a corporation not owned exclusively by veterinarians owns only that much of a veterinary practice as permitted by law,[16] may that corporation enter into a "management agreement" with a veterinarian to operate the practice without violating the provisions of the Veterinarian Licensing Act, where the corporation:

    1) receives a percentage of veterinarian's gross receipts,

    2) is assigned all accounts of the veterinarian,

    3) determines amount of veterinarian's time-off,

    4) has approval of relief veterinarian,

    5) requires veterinarian to deliver to it all patient records,

    6) sets fees for all procedures,

    7) requires veterinarian to carry liability insurance naming corporation as third party beneficiary, and

    8) employs all office and technical staff.

Your third question is as follows:

[3.] Assuming that a corporation not owned exclusively by veterinarians, owns only that much of a veterinary practice as permitted by law, may that corporation enter into an "independent contractor agreement" with a veterinarian to operate the practice, without violating the provisions of the Veterinarian Licensing Act, where the corporation:

---

[16]You do not identify the elements of a veterinary practice that a corporation may own even if the corporation is not owned exclusively by veterinarians. We note that subsection 23(a) of article 8890, V.T.C.S., states that "[t]he practice of a veterinarian who leases space from and practices veterinary medicine on the premises of a mercantile establishment must be owned by a licensed veterinarian."

1) pays for the veterinarian's employee benefits (health insurance, retirement, etc.),

2) withholds the veterinarian's income and social security taxes,

3) sets the time periods that the veterinarian is at the clinic,

4) sets the time period allowed for each examination,

5) has sole authority to determine which patient-client may make an appointment and when, and

6) establishes a drug protocol[.][17]

Subsection 23(b) of the act, as already noted, provides that a veterinarian is not prohibited "from entering into a management agreement and permitting employees or agents of the management company to have access to or copies of patient records as necessary for management functions." This provision does not define "management agreement," but certainly the terms of any management agreement entered into by a veterinarian must be consistent with the act as a whole. The provisions of the "management agreement" and the "independent contractor agreement"[18] are more relevant to the validity of each than the name applied to the agreement.

Your questions about the management agreement and the independent contractor agreement, like your first question, involve some underlying fact questions, which cannot be resolved in an attorney general opinion. We are able to discuss terms of the agreement that are specifically addressed by provisions of the act.

As we have already pointed out, patient records are owned by the veterinarian and free from the control of any person not licensed under the act.[19] While a veterinarian may allow employees or agents of the management company to have access to or copies of patient records as necessary for management functions, we do not believe the management company may require the veterinarian to deliver patient records to it, either temporarily or for the duration of the agreement.

Subsection 23(c) of the act states that it is not a violation of the act for a veterinarian "to pay for franchise fees or other services on a percentage of receipts basis, or to sell, transfer, or assign

---

[17]A protocol is defined as a precise and detailed plan for a regimen of drug therapy. STEDMAN'S MEDICAL DICTIONARY 1155 (5th ed. 1982).

[18]The relationship between corporation and veterinarian is described as an "independent contractor agreement," but it appears to involve more control over the veterinarian's work than typically found in an independent contractor relationship. *See* Attorney General Opinion MW-129 (1980).

[19]V.T.C.S. art. 8890, § 23(b).

accounts receivable." These arrangements do not per se violate the act, but might, in combination with other terms of an agreement, provide evidence that the corporation was actually operating the veterinary practice.

Other terms of the agreements may provide evidence that a veterinarian's professional services are controlled by "any person or entity not licensed under this Act that intervenes between the client and the veterinarian,"[20] or that the veterinarian is employed by the corporation. We cannot make this determination as a matter of law, but the corporation's control over the veterinarian's work schedule, fees, office staff, and more important, over the veterinarian's appointments with patients and use of medications in treatment raise the possibility of such violations. Factors such as payment for the veterinarian's employee benefits and withholding of his or her income and social security may also indicate that an employment relationship exists.

You finally ask:

> [4.]   If any of these arrangements violate the provisions of the Veterinary Licensing Act, what action may the Board take against the veterinarian and/or the corporate entity?

We have not said that any of these arrangements violate the act as a matter of law, although we have identified particular terms of the agreements that are prohibited by provisions of the act. The board should determine, in the first instance, whether a particular veterinarian or unlicensed person has violated the act. It provides remedies against licensed veterinarians and unlicensed persons who engage in the unauthorized practice of veterinary medicine.

The board may discipline a licensed veterinarian who engages in the conduct stated in section 14(a) of the act. The following grounds for discipline are particularly relevant to your questions:

> [The veterinarian] has engaged in practices or conduct in connection with the practice of veterinary medicine which are violative of the standards of professional conduct as duly promulgated by the Board in accordance with law; [or] has permitted or allowed another to use his license, or certificate to practice veterinary medicine in this state"[21]

While the board has enforcement authority against a licensed veterinarian who violates the act or rules promulgated thereunder, it does not have independent authority to enforce the statutory remedies against persons who engage in the unauthorized practice of veterinary medicine or otherwise violate the act. The local prosecutor has jurisdiction to enforce the criminal penalty for

---

[20]*Id.* § 2A(b).

[21]*Id.* § 14(a)(5), (6).

practicing veterinary medicine without a license.[22] Although the board may make a complaint to the prosecutor about a person that it believes has violated this provision, it is within the prosecutor's authority to decide whether or not to prosecute the alleged violator.[23] Under subsection 14(d), the board may request the attorney general to bring an action to recover a civil penalty from "[a] person not licensed under this act who violates this act or a rule adopted by the board."[24] Section 17 provides that the board, "through the Attorney General or any District or County Attorney," may institute a proceeding to enjoin a person from practicing veterinary medicine without having complied with the act.

However, we do not believe that these remedies apply to a corporation that practices veterinary medicine without a license.[25] Each of the three penalties applies to "a person." Section 312.011(10) of the Government Code states with respect to the construction of civil statutes, that "'[p]erson' includes a corporation," "unless a different meaning is apparent from the context of the statute." In the context of the three remedy provisions under consideration, we do not believe that "person" includes a corporation.

The act's provisions on licensing generally refer to a "person" or "persons," see V.T.C.S. art. 8890, §§ 3(a)(2), (5), 4, 7(e), 10, 11, and the only specific reference to a "corporation" appears in section 22(a), which provides that "[n]o sole proprietorship, partnership, or corporation shall engage in veterinary medicine unless the owner, partners, or shareholders, respectively, are all licensees." Thus, the legislature stated its intent expressly when it wished a provision to apply to a corporation. In contrast to the act, various other licensing provisions define "person" as expressly including "corporation." See V.T.C.S. arts. 4512e, § 1(10) (Board of Physical Therapy Examiners); 4512j, § 2(3) (State Committee of Examiners for Speech-Language Pathology and Audiology); 4512o, § 1(4) (licensed chemical dependency counselors); 4542a-1, § 5(31) (Texas Pharmacy Act); 4566-1.01(10) (fitting and dispensing of hearing instruments); see also V.T.C.S. art. 4495b, § 1.03(10) (Medical Practice Act).[26]

The language of section 17 in particular shows that it does not apply to a corporation. This provision authorizes an injunction proceeding "to enjoin any person" from the unlicensed practice of veterinary medicine and provides that the "venue for such injunction proceedings shall be in the

---

[22]*Id.* § 4.

[23]*Meshell v. State*, 739 S.W.2d 246, 254 (Tex. Crim. App. 1987) (en banc).

[24]The penalty is $1,000 for each day of violation. V.T.C.S. art. 8890, § 14(d).

[25]The legislature may establish civil penalties or fines for violation of a state agency rule "against any person, firm or corporation subject to and violating such rule or regulation." *Harvill v. State*, 188 S.W.2d 869, 871 (Tex. Civ. App.--Austin 1945, writ ref'd).

[26]"Person" is defined in the Medical Practice Act to mean an individual, unless otherwise expressly made applicable to a partnership, association, or corporation. V.T.C.S. art. 4495b, § 1.03(10); *see id.* §§ 3.07(c), (e), 3.08(15).

county of the residence of the person against whom such injunction proceedings are instituted."[27] The general rule of venue found in section 15.002 of the Civil Practice and Remedies Code provides that a lawsuit shall be brought "in the county of [the] defendant's residence at the time the cause of action accrued if defendant is a natural person," and "in the county of the defendant's principal office in this state, *if the defendant is not a natural person*."[28] Section 17 incorporates the venue provision for natural persons, indicating that the legislature contemplated that the injunction remedy would apply only to natural persons.

Section 7.22 of the Penal Code states the rule for determining whether a criminal penalty such as section 4 of article 8890, V.T.C.S., applies to corporations.[29] Section 7.22 provides in part:

> (a) If conduct constituting an offense is performed by an agent acting in behalf of a corporation or association and within the scope of his office or employment, the corporation or association is criminally responsible for an offense defined:
>
> > (1) in this code where corporations and associations are made subject thereto;
> >
> > (2) by law other than this code in which a legislative purpose to impose criminal responsibility on corporations or associations plainly appears; or
> >
> > (3) by law other than this code for which strict liability is imposed
> > . . . . [Emphasis added.]

Section 4 of article 8890, V.T.C.S., the criminal penalty provision, states that "a person may not practice, offer or attempt to practice veterinary medicine in the State without first having obtained a valid license to do so." No legislative purpose to impose criminal responsibility on corporations or associations plainly appears in section 4. Accordingly, it does not subject corporations to criminal prosecution. We conclude, in answer to your fourth question, that none of the remedies we have discussed enable the board to take action or to request another officer to take action against a corporation engaged in the unauthorized practice of veterinary medicine.[30]

---

[27]If the person does not reside in the state, venue is in Travis County. V.T.C.S. art. 8890, § 17.

[28]Civ. Prac. & Rem. Code § 15.002(a)(2), (3) (emphasis added).

[29]*See generally Vaughan & Sons, Inc. v. State*, 737 S.W.2d 805 (Tex. Crim. App. 1987) (en banc).

[30]An action in the nature of quo warranto is available if "a corporation exercises power not granted by law." Civ. Prac. & Rem. Code § 66.001(5). If grounds for the remedy exist, the attorney general or the county or district

(continued...)

## S U M M A R Y

The Veterinary Licensing Act, article 8890, V.T.C.S., prohibits the practice of veterinary medicine by a private, for-profit corporation not owned exclusively by veterinarians. Such a corporation may not employ a licensed veterinarian to provide veterinary medical services and itself receive the fee for those services nor may it own the patient or business records or drug inventory of a veterinary medical practice. The Board of Veterinary Medical Examiners may discipline a licensee for permitting or allowing another to use his license or certificate to practice veterinary medicine. Remedies and penalties in the Veterinary Licensing Act for practicing veterinary medicine without a license do not apply to corporations.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General

---

[30](...continued)
attorney of the proper county may petition the district court for leave to file an information in the nature of quo warranto.