OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

November 10, 2000

F.M. "Skip" Langley, D.V.M., M.D., J.D.         Opinion No. JC-0304
Executive Director
Texas State Board of Medical Examiners        Re: Whether the Texas Board of Medical
P.O. Box 2018                                 Examiners may certify a foreign nonprofit
Austin, Texas 78768-2018                      corporation, organized under the laws of a
                                              jurisdiction other than Texas, as a nonprofit health
                                              organization under section 162.001(b) of the
                                              Occupations Code (RQ-0250-JC)

Dear Dr. Langley:

        Section 162.001(b) of the Occupations Code directs the Board of Medical Examiners (the
"Board") to certify a health organization that "is a nonprofit corporation under the Texas Non-Profit
Corporation Act" and that meets the other requirements set out in that section. TEX. OCC. CODE
ANN. § 162.001(b) (Vernon 2000). The Board construes this provision to mean that it may certify
only nonprofit corporations organized under the Texas statute. The Texas Non-Profit Corporation
Act deals with both nonprofit corporations incorporated thereunder and nonprofit corporations
incorporated under the laws of other jurisdictions, namely, foreign corporations. Because of the
inadvertent certification of eight foreign corporations and their disagreement with the Board's
interpretation of section 162.001(b), your predecessor in office asked whether the Board may certify
foreign nonprofit corporations under this section.[1] We conclude that the Board's long-standing
construction that the statute allows certification of only Texas nonprofit corporations is a reasonable
interpretation in harmony with the rest of the statute and is controlling.

        We begin by briefly reviewing the provisions of the Texas Non-Profit Corporation Act (the
"Act") and chapter 162 of the Occupations Code relevant to your question. The Act defines a non-
profit corporation as "a corporation no part of the income of which is distributable to its members,
directors, or officers." TEX. REV. CIV. STAT. ANN. art. 1396-1.02 A(3) (Vernon 1997). A nonprofit
corporation organized under the Act is a domestic corporation. See id. art. 1396-1.02 A(1). A
nonprofit corporation organized under the laws of a jurisdiction other than Texas is a foreign
corporation and is prohibited from conducting affairs in this state until it has procured a certificate
of authority from the Secretary of State to do so. See id. arts.1396-1.02 A(2), 1396-8.01 A. A
foreign corporation that obtains a certificate of authority enjoys the same privileges and is subject

---

[1]See Letter from Bruce A. Levy, M.D., J.D., Executive Director, Texas State Board of Medical Examiners, to
Honorable John Cornyn, Texas Attorney General (June 19, 2000) (on file with Opinion Committee) [hereinafter Request
Letter].

to the restrictions of a domestic corporation except with respect to its internal affairs and debt liability of its members. *Id*. art. 1396-8.02 A.

Chapter 162 of the Occupations Code deals with Board certification of nonprofit health organizations. Section 162.001(a) directs the "board by rule [to] certify a health organization" that applies for certification and satisfies the further requirements of subsection (b) or (c). TEX. OCC. CODE ANN. § 162.001(a) (Vernon 2000). Subsection (b) directs the Board to approve and certify a health organization that "is a nonprofit corporation under the Texas Non-Profit Corporation Act [articles 1396-1.01 to 1396-11.01 of the Revised Civil Statutes] organized" to conduct public interest research, support medical education, improve and develop medical education and practice, deliver public health care, or provide public medical and health instruction. *Id*. § 162.001(b)(1). Additionally, the organization must be "organized and incorporated" only by persons licensed by the Board; and its directors and trustees must also be Board licensed and actively practicing medicine. *Id*. § 162.001(b)(2), (3). Subsection (c) directs the Board to certify a health organization to contract or employ licensed physicians if the organization is "a nonprofit corporation under the . . . Act" and section 501(c)(3) of the United States Code, and is organized and operated as a migrant, community, or homeless health center or a federally qualified health center. *Id*. § 162.001(c). Finally, section 162.003 authorizes the Board to refuse and revoke certification if the Board determines that the organization is established or operated with the intent to violate or violates the provisions regarding the practice of medicine. *See id*. § 162.003.

Your predecessor's question requires us to construe the phrase "a nonprofit corporation under the . . . Act" as used in section 162.001(b). The goal of statutory construction is to give effect to legislative intent, and where the language in the statute is unambiguous, that intent must be found in the plain and common meaning of the words used. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993); *see also Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex. 1996) ("We resort to rules of construction only when the statute in question is ambiguous."). The language of section 162.001(b), however, is not unambiguous. A "nonprofit corporation under the . . . Act" may reasonably be understood to mean: (1) a corporation meeting the definition of a nonprofit corporation under the Act; (2) a nonprofit corporation incorporated under the Act, *i.e.*, a domestic corporation; or (3) a nonprofit corporation subject to the Act, *i.e.*, a domestic corporation or a foreign corporation that has obtained a certificate of authority to do business in Texas. *See Teleprofits of Tex., Inc. v. Sharp*, 875 S.W.2d 748, 750 (Tex. App.–Austin 1994, no writ) (statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more senses); *see also* TEX. REV. CIV. STAT. ANN. arts. 1396-1.01–1396-11.01 (Vernon 1997 & Supp. 2000).

In these circumstances, "[i]f a statute can be reasonably read as the agency has ruled, and that reading is in harmony with the rest of the statute, then [the court is] bound to accept that interpretation even if other reasonable interpretations exist." *Berry v. State Farm Mut. Auto Ins. Co.*, 9 S.W.3d 884, 893 (Tex. App.–Austin 2000, no pet.); *see also Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex. 1998) ("While not controlling, contemporaneous construction of a statute by the administrative agency charged with its enforcement is entitled to great weight."). Additionally, we may consider legislative history and former statutory provisions, the circumstances under which the

statute was enacted, the object sought to be obtained, and the consequences of a particular construction. *See Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994).

For the past twenty-nine years, the Board has interpreted the statute to authorize certification only of domestic nonprofit corporations. This interpretation is a reasonable interpretation in harmony with the other certification requirements of the statute. *See Berry*, 9 S.W.3d at 893 (court bound to accept administrative agency's reasonable and harmonious reading). The legislature has assigned to the Board the authority to enforce section 162.001 and other provisions of the Occupations Code dealing with the practice of medicine. *See* TEX. OCC. CODE ANN. §§ 151.003 (as matter of public policy, necessary to regulate practice of medicine and Board to remain primary means of licensing, regulating and disciplining physicians); 152.001 (Board authorized to regulate practice of medicine); 162.001(a) ("The board by rule shall certify . . . .") (Vernon 2000). The legislature adopted the substance of subsections (a) and (b) of section 162.001 in 1971. *See* Act of May 25, 1971, 62d Leg., R.S., ch. 627, § 4, 1971 Tex. Gen. Laws 2037, 2041 (amending predecessor, former article 4509a of the Revised Civil Statutes). Since that time, the Board has consistently construed the law to authorize certification only of nonprofit corporations incorporated under the Act. *See* Request Letter, *supra* note 1, at 10-12. The Board's construction was set out explicitly in the Texas Administrative Code from 1976 until 1996, when it was changed to comport with the statutory language. *See id.*[2] The Board's construction comports with the other provisions of the statute requiring the Board to investigate and ensure that nonprofit health organizations are organized and operated in accordance with section 162.001 to regulate, in turn, the corporate practice of medicine.

The corporate practice of medicine is prohibited under the Occupations Code. A physician or an applicant for medical license is prohibited from aiding or abetting the practice of medicine by a person, partnership, association, or corporation not licensed to practice medicine by the Board. *See* TEX. OCC. CODE ANN. § 164.052(17) (Vernon 2000); *see also id.* §§ 155.001 (person may not practice medicine without license), .003 (to be eligible for medical license, person must be twenty-one years old, of good professional character, and have completed medical school and training); *Sampson v. Baptist Mem'l Hosp. Sys.*, 940 S.W.2d 128, 137 n.6 (Tex. App.–San Antonio 1996), *rev'd on other grounds*, 969 S.W.2d 945 (Tex. 1998) ("The prohibition of the corporate practice of medicine is the law in all states except Nebraska and Missouri."). Texas courts have held that a corporation comprised of lay-persons that employs licensed physicians to treat patients and receives fees for the services provided is engaged in the unlawful practice of medicine; and the licensed physician so employed violates section 164.052(17) and is subject to having his or her medical

---

[2]Former section 177.2(a), which became effective on January 1, 1976, required the Board to obtain an organization's application for a charter from the Secretary of State and to establish that the "[a]pplication is for charter for a nonprofit corporation under the Texas Civil Statutes article 1396-1.01 *et seq.*" Tex. Board of Medical Examiners, Rule 177.2 (effective 1/1/76) (repealed 1992); *see also* Request Letter at 10-11. The 1976 provision was repealed in 1992 and replaced by a provision requiring "a copy of the certificate of incorporation under the Texas Non-Profit Corporation Act." *proposed* 17 Tex. Reg. 1171 (1992), *adopted* 17 Tex. Reg. 2393, 2394 (1992). The 1992 provision was repealed in 1996 and replaced by a provision written to reflect the statutory language. *See proposed* 20 Tex. Reg. 9246, 9247 (1996), *adopted* 21 Tex. Reg. 107 (1996) (codified at 22 TEX. ADMIN. CODE § 177.3(3) (2000)).

license cancelled, revoked or suspended by the Board. *See Garcia v. Texas State Bd. of Med. Exam'rs*, 384 F. Supp. 434 (W.D. Tex. 1974), *aff'd*, 421 U.S. 995 (1975) (upholding constitutionality of predecessor to sections 162.001(b)(2) and 164.052(17) ); *see also Flynn Bros., Inc. v. First Med. Assocs.*, 715 S.W.2d 782, 784 (Tex. App.–Dallas 1986, writ ref'd n.r.e.) (and cases cited therein).

While the legislative history is silent regarding the purpose of section 162.001(b),[3] its apparent purpose is to create a limited exception to the prohibition against the corporate practice of medicine. *See Union Bankers Ins. Co.*, 889 S.W.2d at 280 (when legislative intent cannot be discerned from statutory language, circumstances under which statute was enacted, legislative objective, and consequences of particular construction may be considered). The statute, by its terms, authorizes the Board to "certify" as health organizations those nonprofit corporations organized and directed by physicians licensed by the Board. They are "special health organizations because they allow the employment of physicians for the purpose of practicing medicine by a corporation, thus providing an exception to the prohibition against the corporate practice of medicine in Texas." Request Letter, *supra* note 1, at 4. Although a foreign corporation that obtains a certificate of authority to do business under the Act is generally subject to the restrictions and liabilities imposed on similar domestic corporations with respect to affairs conducted within the state, the law of its incorporating jurisdiction governs significant aspects of a foreign corporation. The Act provides that:

> [T]he laws of the jurisdiction of incorporation of a foreign corporation shall govern (1) the internal affairs of the foreign corporation, including but not limited to the rights, powers, and duties of its board of directors and members and matters relating to its membership, and (2) the liability, if any, of members of the foreign corporation for the debts, liabilities, and obligations of the foreign corporation for which they are not otherwise liable by statute or agreement.

TEX. REV. CIV. STAT. ANN. art. 1396-8.02 A (Vernon 1997). Section 162.001(b) requires the Board to investigate and regulate the internal affairs of a nonprofit health organization to ensure that it is "organized and incorporated solely by persons licensed by the board" and "its directors and trustees . . . are . . . licensed by the board; and actively engaged in the practice of medicine." TEX. OCC. CODE ANN. § 162.001(b)(2), (3) (Vernon 2000); *see id.* § 164.052(17). The Board is expressly *authorized* to refuse certification if it determines that an organization is established, organized, or operated in violation of the law or with intent to violate the law. *See id.* §162.003(1). And, it *must* revoke a certification granted to such an organization. *See id.* §162.003(2). The Board asserts it cannot effectively perform these duties with respect to foreign corporations whose internal affairs and structure are governed by the laws of other jurisdictions; and we cannot say, as a matter of law, that the Board is incorrect.

---

[3]*See* HOUSE COMM. ON PUBLIC HEALTH, BILL ANALYSIS, Tex. H.B. 882, 62d Leg., R.S. (1971). The legislature did not begin audio-taping public hearings or floor debates until the following 1973 legislative session.

The doctrine of legislative acceptance lends further support to the Board's interpretation. When the legislature reenacts without substantial change an ambiguous statute that has been previously construed by an agency charged with its execution, a court should ordinarily adopt the agency's construction. *See Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 248 (Tex. 1991); *Southwestern Life Ins. Co. v. Montemayor*, 24 S.W.3d 581, 585 (Tex. App.–Austin 2000, pet. denied). Since 1971, the legislature has twice substantively amended the law now codified in section 162.001, but has not changed the language at issue to explicitly overrule the Board's consistent and long-standing interpretation that only domestic nonprofit corporations may be certified as nonprofit health organizations. *See* Act of May 25, 1991, 72d Leg., R.S., ch. 721, § 1, 1991 Tex. Gen. Laws 2559; Act of May 18, 1995, 74th Leg., R.S., ch. 392, § 1, 1995 Tex. Gen. Laws 2939. In fact, the legislature again used the language at issue in the subsequently adopted subsection (c) authorizing the Board to certify an organization that "is a nonprofit corporation under the" Act and section 501(c)(3) of the United States Code, and that is organized and operated as a migrant, community, or homeless health center or a federally qualified health center. *See* TEX. OCC. CODE ANN. § 162.001(c) (Vernon 2000); Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 1, sec. 162.001, 1999 Tex. Gen. Laws 1431, 1510.

Finally, we are unpersuaded that the Board's interpretation violates the federal constitution. A brief submitted on behalf of several foreign nonprofit corporations contends that a construction denying certification to foreign nonprofit corporations would violate the Full Faith and Credit Clause of the United Constitution, because "Texas would be refusing to give full faith and credit to the laws of the other states under which the foreign corporations are formed, instead requiring that the corporations be formed as Texas Corporations in order to do business in the state."[4] We are unaware of any case law supporting this legal proposition. And the only case the brief cites in support, *Wells v. Hiskett*, 288 S.W.2d 257 (Tex. Civ. App.–Texarkana 1956, writ ref'd n.r.e.), is inapposite. *Wells* does not address the constitutionality, under the Full Faith and Credit Clause, of a state statute excluding or restricting foreign corporations from engaging in an activity in that state. *See also Railway Express Agency, Inc. v. Virginia*, 282 U.S. 440, 444 (1931) ("[Virginia is under its constitution] simply . . . refusing to grant a foreign corporation a permit to transact local business without taking out a charter from the jurisdiction within which [the] business must be done. There is no substantial evidence that the refusal would impose a burden on interstate commerce and it is presumed to be constitutional."). Instead, *Wells* merely deals with judicial recognition of a corporate entity by giving "full faith and credit" to its validly issued foreign charter:

> Appellees also alleged that the Corporation was not duly incorporated; that its permit to do business in Texas was obtained by fraud; . . . and that its charter and permit were in violation of the laws of Texas and Oklahoma. The record in this case shows that the corporate charter of the Corporation granted by . . . Oklahoma was regular and valid; [and] that the permit and renewal permit issued . . . by . . . Texas was valid and legal . . . . We must

---

[4]*See* Brief from David W. Hilgers, Hilgers & Watkins, to Honorable John Cornyn, Texas Attorney General at 6-8 (Sept. 11, 2000) (on file with Opinion Committee).

> give 'full faith and credit' to public acts of other states, which includes the issuance of charters to corporations.

*Wells*, 288 S.W.2d at 263 (citations omitted).

In sum, although there may be other reasonable interpretations, the phrase "a nonprofit corporation under the . . . Act" in section 162.001(b) of the Occupations Code can reasonably be read as the Board has interpreted it, *i.e.*, a nonprofit corporation organized under the Texas Non-Profit Corporation Act. As that interpretation is in harmony with the rest of the statute, we accept the Board's interpretation and it is controlling.

## S U M M A R Y

Because the phrase "a nonprofit corporation under the . . . Act" in section 162.001(b) of the Occupations Code can reasonably be read as the Board of Medical Examiners has interpreted it, *i.e.*, a nonprofit corporation organized under the Texas Non-Profit Corporation Act, and is in harmony with the rest of the statute, we accept that interpretation and it is controlling.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee