**Dr. Donald WATT, D.O., Appellant,**

v.

**TEXAS STATE BOARD OF MEDICAL EXAMINERS, Appellee.**

No. 15240.

Court of Civil Appeals of Texas.

Dallas.

May 31, 1957.

Rehearing Denied June 28, 1957.

See, also, Tex.Civ.App., 287 S.W.2d 559.

Martin & Bailey, Dallas, for appellant.

Henry Wade, Dist. Atty., and John J. Fagan, Asst. Dist. Atty., Dallas, for appellee.

YOUNG, Justice.

On November 7, 1955 appellee Board had entered an order permanently canceling and revoking appellant's license to practice medicine in the State of Texas. From this order Dr. Watt appealed to the District Court of Dallas County and upon a trial de novo (Art. 4506, V.A.C.S., as amended in 1953) the jury made answers to special issues; the Board having filed motion for peremptory instruction at close of testimony, which was denied. After the jury verdict, appellant filed motion for judgment on their answers, which was overruled. The Board, in turn, filed motion for judgment notwithstanding jury answers to issues 3 and 4, which being granted, the trial court rendered judgment suspending the license of Dr. Watt to practice medicine in the State of Texas for a period of eighteen months. Due exception and notice of appeal were taken to such court action.

Gravamen of the charges against Dr. Watt at the Medical Board hearing and on

trial later in the District Court was violation of secs. 12 and 13, Art. 4505, V.A.C.S., as amended, Acts of 1939, 46th Legislature, and providing:

(12) "The impersonation of a licensed practitioner, or permitting, or allowing, another to use his license, or certificate to practice medicine in this State, for the purpose of treating, or offering to treat, sick, injured, or afflicted human beings." (13) "Employing, directly or indirectly, any person whose license to practice medicine has been suspended, or association in the practice of medicine with any person or persons whose license to practice medicine has been suspended, or any person who has been convicted of the unlawful practice of medicine in Texas or elsewhere."

The jury questions and answers were in effect: (1) That Harry M. Hoxsey, on or about December 5, 1930, in the County Court of Fulton County, Illinois, entered a plea of guilty to a charge of violating the Medical Practice Act of the State of Illinois, S.H.A.Ill. c. 91, § 1 et seq.; (2) that Harry M. Hoxsey, on or about March 17, 1930, in the County Court of Marion County, Illinois, entered a plea of guilty to a complaint of engaging in the practice of medicine without having a valid and lawful license in the State of Illinois; (3) that on or about the 11th day of October, 1955 Donald Watt *was not* associated in the practice of medicine with Harry M. Hoxsey at Hoxsey Cancer Clinic, Dallas; (4) that on or about November 7, 1955 or before such date, Donald Watt *did not* permit or allow the owners of Hoxsey Cancer Clinic at 4507 Gaston Avenue, Dallas, to use his license or certificate to practice medicine in Texas for the purpose of treating or offering to treat sick, injured, afflicted human beings.

It is the position of appellant that only the jury answers to issues 3 and 4 are material to this controversy; there being abundant evidence in support of these issues, to wit: That he was not associated in the practice of medicine with Harry Hoxsey and had not allowed or loaned his li-

cense to practice medicine to the owners of Hoxsey Cancer Clinic; the trial court committing reversible error in disregarding said jury findings and in failing to render judgment favorable to him. Appellant's single point and answering counterpoints require an extensive recitation of matters testified to by Dr. Watt; in general, that he was 58 years of age, first admitted to practice medicine in New York State in 1929; coming to Texas in 1943, taking examination and obtaining license to practice his profession through appellee Medical Board at Baylor University, Dallas. He had practiced at various places in Texas; for the past four years doing work for Hoxsey Cancer Clinic, consisting principally of reading or interpreting X-ray pictures. He is a certified roentgenologist, interprets more than 200 X-ray films daily, and has about eight people under him. He never knew that Harry Hoxsey had been convicted of practicing medicine without a license in the State of Illinois. After hours at the Hoxsey Clinic, where appellant is paid a salary to read X-ray pictures, he does some private practice by way of house calls, an activity not forbidden under his oral contract with the clinic, the money therefor belonging to him; that he does not and has not authorized anyone to do advertising in his behalf.

The testimony of Dr. Watt, relied on by appellee Board in support of judgment regardless of jury findings 3 and 4, will now be detailed:

"Q. State when you began your connection with the Hoxsey Cancer Clinic? A. In 1949.

"Q. And you stayed with them how long at that time? A. 2 years.

"Q. And, then, you left and how long were you away from there? A. About one year.

"Q. And then you came back? A. That's right. * * *

"Q. What are your arrangements of association, or employment, with Harry M.

Hoxsey, please sir? A. I am the man that interprets the X-ray film at the Clinic.

"Q. Did Harry M. Hoxsey hire you when your were employed out there? A. Yes.

"Q. And he fixed your salary? A. Yes.

"Q. And he pays you each month your salary, whatever you may receive? A. That's right. * * *

"Q. What salary do you receive from him? A. $2,000.00 a month.

"Q. He and his wife you recognize as the owners of the Hoxsey Cancer Clinic and all of the buildings, equipment, X-ray machines, drugs and everything else out there? A. Yes. * * *

"Q. Now, any patients that come into the Hoxsey Cancer Clinic in answer to any report about you, or anybody else, you look on them as patients of the Clinic, do you not? A. That's right. * * *

"Q. You do not treat or separate your patients from the Cancer Clinic's patients? A. No, sir.

"Q. Do you have patients who come and who are processed through the Clinic procedure at the Receiving Desk and on through, and they are handled just as all patients are handled? A. That's right.

"Q. And the charges are made by whom? A. The Business Office.

"Q. And the fees, if any, are collected by the Business Office of the Hoxsey Cancer Clinic? A. That's right.

"Q. Now, any of the money paid by any of the patients goes into the treasury of the Hoxsey Cancer Clinic and you have nothing to do with it? A. That's correct.

"Q. And all that you look to is your salary? A. Yes.

"Q. In your Income Tax Report for the past few years have you shown any other source of income other than the salary that came from the Hoxsey Cancer Clinic? A. No, sir; with the exception of some trips that I have made, which would be considered practice—a part of the income from the Clinic. Aside from my income from the Clinic I have had no other income; no sir. * * *

"Q. Now, your name appears in the telephone book in the yellow sheets under 'Doctor of Osteopathy—Cancer Treatment, etc.' Now, was that put in by the Business Office of the Clinic? A. Yes.

"Q. And is that paid for by them? A. Yes.

"Q. And you at various times hold Staff Meetings, Doctor Watt, with Dr. Charles Barberee, who is in charge of the Medical Staff? A. Yes. * * *

"Q. And who else is in charge of the Medical Staff? A. Nobody else. He is recognized as the Chief of Staff.

"Q. Is Harry M. Hoxsey present at all of these meetings? A. No, sir.

"Q. Or conferences? A. No, sir.

"Q. Is he present at some of them? A. Yes.

"Q. And he, at those conferences—Dr. Barberee and Harry M. Hoxsey, the owner of the Clinic, he allows everybody to discuss matters—is that right? A. Yes; that's right.

"Q. And a vote is taken and the policies are decided then and there? A. That's right.

"Q. And, if Dr. Barberee is present, he votes and, if you are present you vote and if Harry M. Hoxsey is present, he votes? A. That's right. * * *

"Q. Do you have any written contract with him? A. No, sir.

"Q. You have an oral contract with him and you are there as long as he wants to hire you? A. That's right.

"Q. And, he can fire you at any time? A. That's right. * * *

"Q. He merely employs you and the other doctors—Osteopaths and Medical Doctors—to practice your profession as you see it, and he takes care of the overhead and pays all of the salaries and he takes the profits or losses? A. Yes, sir. * * *

"Q. Now, in the event that you and your six (6) associates, who are Doctors of Osteopathy and M.D.s, walked out of there today and left, or anything happened to you, he could not go on with the Clinic unless he got some more licensed doctors, could he? A. That, I would say, would be correct."

These additional facts were stipulated by the parties as not requiring proof: "(1) Dr. Donald Watt was employed by the Hoxsey Cancer Clinic on November 7, 1955 and for some months previous at a salary of $2,000.00 per month and receives no other fees from said clinic. (2) The Hoxsey Cancer Clinic was on said date and is now owned by Harry M. Hoxsey and Martha Hoxsey, his wife, who are not medical doctors and no medical doctor owns any interest in the clinic. (3) Dr. Donald Watt on said date, and prior thereto and now, performs medical services for the Hoxsey Cancer Clinic and fees for such service have been and are collected by the clinic from the patients. * * * (4) That neither Harry M. Hoxsey or Martha Hoxsey *practice* medicine in any manner whatsoever, at the Hoxsey Cancer Clinic."

■ Under Rule 301, Texas Rules of Civil Procedure, the trial court may, upon motion and notice, disregard any special issue jury finding that has no support in the evidence. But in acting upon such a motion (for judgment non obstante veredicto) all testimony must be considered in a light most favorable to the party against whom the motion is sought, and every reasonable intendment deductible from the evidence is to be indulged in such party's favor. 25 Tex.Jur., p. 502.

■ From a reading of above testimony and stipulations it will be observed that Dr. Watt was employed by Hoxsey Cancer Clinic at a salary of $2,000 per month and received no other fees from the Clinic; that said Clinic was owned by Harry M. and Martha Hoxsey, who were not medical doctors and that no medical doctor owned any interest in the Clinic; that appellant performed medical services for Hoxsey Cancer Clinic, all fees for such services being collected by the Clinic from patients of the Clinic; and further, that Hoxsey and wife did not practice medicine in any manner whatsoever.

We find no distinction between the facts above stated and those presented in Rockett v. Texas State Board of Medical Examiners, Tex.Civ.App., 287 S.W.2d 190, where sec. 12, Article 4505, was construed. It was there held that the statute was violated when Dr. Rockett performed medical services for patients of the Thomas Clinic on a monthly salary, the fees for such services being collected by the Clinic owned by one not a medical doctor, and that a cancellation of his license to practice medicine was thereby justified. The trial court had found in favor of appellee Board, after discharge of jury upon their failure to agree; the San Antonio Court declaring that such action was proper under "the undisputed facts." On the point at issue that Court said: "Appellant was employed by Thomas Clinic for a salary of $500 per month and he received no fees; the Clinic was owned by Ralph C. Thomas, who was not a medical doctor and no medical doctor owned any interest in the clinic; appellant performed medical services for the clinic and the fees for such services were collected by the clinic. Such conduct on the part of appellant was in effect 'permitting, or allowing, another to use his license or certificate to practice medicine in this State, for the purpose of treating, or offering to treat, sick, injured, or afflicted human beings', which conduct is prohibited by the provisions of Section 12 of Art. 4505, Vernon's Ann.Civ. Stats., and is made a ground for the for-

feiture of a license to practice medicine by the provisions of Art. 4506, Vernon's Ann. Civ.Stats. See Section 5, Art. 4505."

We do not regard the cases cited by appellant as in point (Republic Reciprocal Ins. Ass'n v. Colgin Hospital & Clinic, 1933, 123 Tex. 31, 65 S.W.2d 286, and Woodson v. Scott & White Hospital, Tex.Civ.App., 186 S.W.2d 720); the case first cited holding, in effect, that a corporation or partnership may own a clinic and have implied lawful authority to employ licensed doctors to do their medical work. Sections 12 and 13 were not added to the provisions of Art. 4505 until 1939. In so far as relevant to the instant case, the Austin Court held in Woodson's appeal that under the contract there construed, Dr. Woodson and associates were neither employees nor agents, but rather occupied the status of independent contractors, serving their own patients; and that the percentage of fees paid over to the hospital was based on other and valid considerations.

We feel duty bound to follow the conclusions reached in the Rockett appeal. For notwithstanding the fact that our Supreme Court's disposition of the cause was that of "Writ refused, no reversible error", the question involved on such appeal was one of law—the construction of a statute. Rule 483, T.C.P.; and see City of Dallas v. Rosenthal, Tex.Civ.App., 239 S.W.2d 636.

The judgment under review is accordingly affirmed.