Connie Walker **LINDGREN**, Appellant,

v.

**DELTA INVESTMENTS, a Texas General Partnership; Billy G. Holcomb; and Charles H. Lehne, Appellees.**

No. 03–96–00204–CV.

Court of Appeals of Texas, Austin.

Dec. 12, 1996.

Rehearing Overruled Feb. 6, 1997.

---

Malcolm Robinson, Austin, for Appellant.

John B. Meadows, Meadows & Welch, Austin, for Appellee.

Before JONES, KIDD and B.A. SMITH, JJ.

KIDD, Justice.

Delta Investments [1] sued Connie Walker [2] for breach of contract arising from her failure to provide an accounting and reimburse Delta for excess capital contributions to the Delta–Walker Joint Venture partnership. Delta sought an accounting, dissolution, reimbursement, and attorney's fees. Following a jury verdict and judgment favorable to Delta, Walker appeals. We will affirm.

### BACKGROUND

On August 27, 1984, Delta and Walker created the Delta–Walker Joint Venture ("Delta–Walker") for the purpose of purchasing and developing a tract of property in Cedar Park, Texas, known as the "Hatch Lane" property. The ensuing financial obligations of Delta–Walker and the disputed contributions and liabilities of the parties led to the present litigation. Because the financial transactions forming the basis of this dispute are complicated and essential to our holding, we set forth the facts in some detail.

*A. The Debts*

Upon the formation of the joint venture, Delta–Walker received an initial loan of $790,000 (the "joint venture note") from Texas Commerce Bank ("TCB") to purchase the

---

1. Delta Investments, appellee, is a partnership between Billy Holcomb and Charles Lehne, appellees, and will be referred to herein as "Delta."

2. Connie Walker Lindgren ("Walker") appeals individually and as executrix of her deceased husband's estate.

Hatch Lane property. Delta–Walker received an additional loan of $164,963.81 (the "utilities note") to establish utilities on the property.

In September of 1988, Delta Investments, individually, *borrowed* $297,000 (the "Delta note") from TCB, *secured* by eleven lots it owned individually and applied $265,774.94 of the loan proceeds to pay off both the principal and interest on the utilities note and the accrued interest on the joint venture note. In July of 1989, Walker made a *cash payment* of $61,511.10 to TCB toward the interest on the joint venture note. In May of 1991, TCB *foreclosed* on the lots put up by Delta as collateral on the Delta note and gave Delta a *credit* of $142,503.79 from the sale of the lots.

In July of 1994, TCB, Delta, Delta–Walker, Holcomb, Lehne, and Walker entered into a settlement agreement in which Delta made a cash payment of $265,000 to TCB and renewed a separate unrelated note for $100,000; in return, TCB released all of the parties from liability on all existing loan obligations to TCB.[3] Further, Delta–Walker agreed TCB would receive the proceeds from the foreclosure on the Hatch Lane property; in return, TCB released all parties to the settlement agreement from liability on the joint venture note.

## B. The Dispute

Although the settlement agreement released Delta–Walker from its financial obligations, the dispute regarding the partners' capital contributions was just beginning. On July 21, 1994, Delta sent a letter to Walker setting forth her share of Delta's contributions to reduce the debts of the joint venture. Walker replied she did not owe anything to Delta. On September 29, 1994, Delta sent a second letter to Walker demanding reimbursement. On November 3, 1994, Delta filed a petition in the district court seeking an accounting, dissolution of the partnership, attorney's fees, and reimbursement by Walker in the amount of $125,071.47 as her share of the contributions made by Delta.

## C. The Trial

In a trial before a jury, both parties presented evidence of the various financial transactions entered into by the parties for the benefit of the joint venture. The trial court submitted (1) a broad-form jury question inquiring as to what sum of money, if any, would compensate Delta Investments for capital contributions to Delta–Walker not matched by Walker; and (2) a jury question on the issue of whether Walker breached the joint-venture agreement by failing to reimburse Delta for half of its capital contributions and provide an accounting. In addition, the trial court submitted jury questions on the issue of attorney's fees.

The jury returned a verdict that (1) Walker owed Delta $65,000 for capital contributions made by Delta to the joint venture and not matched by Walker; (2) Walker breached the joint-venture agreement; and (3) Delta was entitled to reasonable attorney's fees equal to forty percent of the judgment plus five percent if the case were appealed. The trial court rendered judgment in accordance with the jury verdict. Both parties filed motions for judgment notwithstanding the verdict and motions to disregard the jury's answers. Walker filed a motion for new trial. All motions were overruled by the trial court.

## D. The Appeal

Walker appeals in nine points of error. In points of error one and two, she challenges the jury's answer to the broad-form question regarding the unmatched contributions made by Delta. In points of error three and seven, she complains of the trial court's failure to submit her requested issues and instructions as part of the jury charge. In points of error four, five, six, and eight, she complains that the question of whether she breached the joint venture agreement should not have been submitted to the jury and challenges the jury's answer and the award of attorney's fees. In point of error nine, she complains

---

**3.** The total debt released in the settlement agreement consisted of eight loans: the Delta note, the joint venture note, three loans by Delta individu- ally, and three loans by Holcomb, Lehne–Holcomb, and Lehne Enterprises, separately.

that the trial court erred in rendering judgment on the jury verdict without taking into consideration the amounts owed to her by Delta.

Delta raises a single cross-point appealing the trial court's denial of its motion to disregard the jury finding and enter judgment notwithstanding the verdict in an amount greater than $65,000.

## DISCUSSION

### I. The Damage Award

#### A. Standard of Review

In points of error one and two, Walker contends the trial court erred in rendering judgment on the jury verdict because there is no evidence to support the jury's finding on the issue of reasonable compensation, or in the alternative, the evidence is factually insufficient to support the jury's finding.

In deciding a no-evidence point, we must consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). We will uphold the finding if more than a scintilla of evidence supports it. *Crye*, 907 S.W.2d at 499. To determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

#### B. Review of the Evidence

In response to the trial court's broad-form question, the jury found $65,000 would compensate Delta for its capital contributions to the joint venture that were not matched by Walker. As the trier of fact, the jury has the discretion to award damages within the range of evidence presented at trial. *Howell Crude Oil Co. v. Donna Refinery Partners, Ltd.*, 928 S.W.2d 100, 108 (Tex.App.—Houston [14th Dist.] 1996, writ requested). In *Texas Workers' Compensation Commission v. Garcia*, 893 S.W.2d 504 (Tex.1995), the Texas Supreme Court noted that, in cases where the range of answers is not restricted by the substantive law granting the remedy, the jury may consider conflicting expert testimony on a particular issue and, using its judgment as the finder of fact, blend that testimony to arrive at a proper verdict. *Id.* at 529; *see also City of Houston v. Harris County Outdoor Advertising Assoc.*, 879 S.W.2d 322, 334–35 (Tex.App.—Houston [14th Dist.] 1994, writ denied), *cert denied*, —— U.S. ——, 116 S.Ct. 85, 133 L.Ed.2d 42 (1995) (noting the trier of fact has the discretion to award damages within the range of evidence presented at trial).[4]

The evidence presented at trial shows that Walker made a straight *cash* payment toward the joint-venture note, whereas Delta contributed part of the proceeds of a separate *loan*. That loan was not repaid in cash; instead, TCB gave Delta a *credit* for the proceeds from foreclosure on the lots Delta put up as security for the loan and forgave the balance as part of the settlement agreement. The value of the foreclosed lots, for

4. *Insurance Co. of North America v. Cangelosi*, 217 S.W.2d 888 (Tex.Civ.App.—Waco 1949, no writ), illustrates the point. In a suit to recover for the loss of hay destroyed in a barn fire, the jury was presented with conflicting evidence of both the size of the barn and the average size of a bale of hay. *Id.* at 889–90. The conflicting evidence showed that the barn could have held anywhere from 931 to 10,000 bales of hay at the time of the fire. *Id.* The appellate court upheld the jury's finding of 4,000 bales because it was primarily for the jury to consider the evidence and resolve the fact issue. *Id.*

Also, for example, in condemnation cases, juries receive evidence of the value of the property before and after condemnation. In reviewing the record in such a case, an appellate court must determine "if there has been a significant departure by the jury from the range of expert testimony presented at trial." *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 93 (Tex. App.—El Paso 1995, writ denied). When, as in the present case, the valuation of the parties' contributions to the debts of the joint venture is imprecise and subject to conflicting interpretations, we acknowledge the jury's discretion to award damages within the range of evidence presented at trial. *See Howell Crude Oil Co.*, 928 S.W.2d at 108.

purposes of determining Delta's capital contribution to the joint venture, was disputed at trial: Delta argued the lots should be valued at fair market value; Walker contended the lots should be valued at cost.

In addition to the conflicting evidence regarding the valuation of the lots, the parties dispute the effect of the final settlement agreement on the joint venture note and the liabilities of the parties. Delta contends twenty-nine percent of its cash payment of $265,000 pursuant to the settlement agreement was applied toward the joint venture note. Walker contends TCB did not apply any portion of Delta's cash payment toward the discharge of the joint venture note but instead accepted the proceeds from the foreclosure sale of the Hatch Lane property as full payment on the note.

We believe the jury was entitled to take into consideration these intangible factors such as the value of a cash payment as opposed to payment by loan, the valuation of the lots put up as collateral, and the quantitative effect of the settlement agreement on the various liabilities of the parties. The parties presented the jury with a wide range of testimony regarding the financial contributions of Delta and Walker to the debts of the joint venture. Delta urges Walker owes a total of at least $125,071.47; Walker contends she owes nothing. As noted above, the jury has the discretion to award damages within the range of evidence presented at trial. Because we cannot say the jury's answer of $65,000 is outside the range of evidence the jury could properly consider, we overrule Walker's points of error one, two, and nine and Delta's cross-point of error.

## II. The Jury Charge

In points of error three and seven, Walker contends the trial court erred in failing to submit her requested issues and instructions. Walker requested that the trial court instruct the jury that one partner may not profit from another partner and, as a confidential agent of all other partners, a partner must make full disclosure of all material facts relating to the partnership affairs. Walker also requested that the court submit special issues on what loss, if any, Delta suffered arising

from the Delta note and whether Delta's cash payment under the settlement agreement was voluntary.

A trial court's refusal to submit requested instructions or special issues will not be overturned on appeal absent an abuse of discretion. *Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 836 (Tex.1986); *City of Houston v. Leach,* 819 S.W.2d 185, 197 (Tex.App.—Houston [14th Dist.] 1991, no writ). A trial court has broad discretion in determining the proper issues and instructions to be submitted to the jury. *Gunn Buick, Inc. v. Rosano,* 907 S.W.2d 628, 632 (Tex.App.—San Antonio 1995, no writ). A trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner or without reference to any guiding principles. *City of Austin v. Janowski,* 825 S.W.2d 786, 788 (Tex.App.—Austin 1992, no writ).

■ The trial court submitted broadly question number one, which asked: "What sum of money, if any, if now paid in cash, would fairly and reasonably compensate Delta Investments for any capital contributions made to the Joint Venture that were not matched by the Walkers?" Pursuant to rule 278, only those issues and instructions raised by the pleadings and the evidence are to be submitted to the jury. Tex.R. Civ. P. 278. Further, the trial court need only submit the controlling issues in a case and need not submit shades and phases of controlling issues. *Id.* The trial court's refusal to submit "other and various phases on different shades of the same question" will not be reversed on appeal. *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.,* 794 S.W.2d 380; 383 (Tex.App.—Corpus Christi 1990, writ denied). Walker's request for a special issue on the loss, if any, suffered by Delta arising from the Delta note is simply a variation of the issue actually submitted by the court. We cannot say the trial court abused its discretion in refusing to submit Walker's special issue number one.

■ Question number one was accompanied by an instruction that the jury could consider only "the amount that the contributions add to the assets of the joint venture" and "the amount that the contributions decrease the liabilities of the Joint Venture."

The trial court has the discretion to determine which instructions are necessary to answer each special issue. *See Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974). Walker's requested instructions dealt with the relationship of one partner to another, whereas the submitted special issues dealt solely with the financial losses of the partners. We cannot say the trial court abused its discretion in refusing to submit Walker's requested instructions. Accordingly, we overrule points of error three and seven.

### III. Breach of Contract and Attorney's Fees

■ Walker contends the breach of contract finding is not supported by sufficient evidence and argues that the special issue regarding breach of contract should not have been submitted to the jury but rather decided by the trial court as a matter of law. Walker also complains of the broad form of the special issue and challenges the jury's finding and the award of attorney's fees in favor of Delta. A determination that Walker did not in fact breach the agreement would not require a reversal on any issue except attorney's fees.

From the record and the pleadings, it appears Delta's main contention was that Walker refused to engage in any type of accounting, which was required under the articles of the joint venture agreement.[5] At trial, the jury heard evidence of Delta's attempts to obtain an accounting from Walker. As evidenced by the letters exchanged between the parties prior to this litigation, Walker insisted she owed nothing when confronted by Delta with the discrepancy in capital contributions. We hold this evidence is more than sufficient to sustain the jury's finding of breach of contract. Accordingly, we overrule points of error five and six.

■ Walker contends that the breach of contract issue should not have been submitted to the jury because it called for a legal as opposed to factual determination. Although a trial court should not submit a pure question of law to the jury, it is permissible to submit a question that asks the jury to resolve a factual dispute concerning a party's failure to perform according to the terms of a contract. *Meek v. Bishop Peterson & Sharp, P.C.,* 919 S.W.2d 805, 808 (Tex.App.—Houston [14st Dist.] 1996, writ denied); *Cannan v. Varn,* 591 S.W.2d 583, 589 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *see also Briargrove Shopping Center v. Vilar, Inc.,* 647 S.W.2d 329, 333 (Tex.App.—Houston [1st Dist.] 1982, no writ). Here, Delta sued Walker to recover for Walker's alleged failure to reimburse Delta for its capital contributions toward the debts of the joint venture. The special issue regarding breach of contract asked the jury to resolve this factual dispute between the parties.

We cannot say the trial court abused its discretion in submitting the special issue and awarding attorney's fees in favor of Delta. Accordingly, we overrule points of error four and eight.

### CONCLUSION

Having overruled all of Walker's points of error and Delta's cross-point of error, we affirm the judgment of the trial court.

---

5. Paragraph eleven of the joint venture agreement provides: "At the time when the joint venture is dissolved, the joint venturers if living or the surviving joint venturer or joint venturers and the legal representatives of the deceased joint venturer shall make a perfect, just and true final account of all things relating to the business of the joint venture and in all things truly adjust same."